UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRUDY PATTERSON** | **CIVIL ACTION** |
| **VERSUS** | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | **NO. 07-418-FJP-CN** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, August 28, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TRUDY PATTERSON | CIVIL ACTION |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | NO. 07-418-FJP-CN |

## MAGISTRATE JUDGE'S REPORT

Plaintiff, Trudy Patterson, seeks judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Social Security Act (the Act). In making that final decision, the Administrative Law Judge (ALJ) reached the fourth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that plaintiff could perform her past relevant work.

## FACTS AND PROCEDURAL HISTORY

On September 13, 2000, the plaintiff protectively filed applications for Title II disability insurance benefits and for Title XVI supplemental security income benefits. In both applications plaintiff alleged disability beginning December 31, 1998, due to diabetes, Bipolar disorder, Graves Disease, and a "sweat gland disease." (Tr. 192, 211, 571.) The claims were denied initially on May 31, 2001, and after an administrative hearing before Administrative Law Judge (ALJ) James W. Lessis, an unfavorable decision was issued on February 28, 2003. (Tr. 73, 575, 121.) After a request for review of the 2003 denial, the

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

2

Appeals Council vacated and remanded that decision (Tr. 127-28.)[2]  A second hearing was held on January 24, 2005, before ALJ Fishman, and on December 15, 2005, he issued an adverse decision denying disability. (Tr. 83.) The plaintiff again sought review by the Appeals Council, and on March 24, 2006, the case was again remanded for further proceedings and for issuance of a new decision. (Tr. 186-89.)[3]  A third administrative hearing was held on August 8, 2006, before ALJ Lawrence T. Ragona, and providing testimony were plaintiff; William Stampley, a vocational expert (VE); and, by teleconference, Thomas Fain, Ph.D., a psychological expert.  Plaintiff was represented by counsel. (Tr. 641.)  On September 26, 2006, ALJ Ragona issued an adverse decision concluding that plaintiff was not disabled because she could perform her past relevant work. (Tr. 22-32.)

The ALJ found that 1) plaintiff met the insured status requirements of the Social Security Act through December 31, 2003; 2) plaintiff had not been engaged in substantial gainful activity at any time relevant to this decision;[4] 3) plaintiff had severe impairments consisting of diabetes, hypertension, Graves' disease, obesity, impaired vision secondary to Grave's disease and bipolar disorder, however these impairments or combination of

---

[2] The Appeals Council remanded the case because the ALJ's decision did not contain a rationale for the "B" and "C" criteria of a mental impairment, and because the decision indicated that plaintiff suffered from both exertional and non-exertional impairments, the ALJ should have called upon a vocational expert to determine the extent to which the claimant's limitations erode the occupational base for light work. (Tr. 127-128.)

[3] The Appeals Council remanded the case because 1) the ALJ obtained a consultative examination dated June 21, 2005, and in accordance with HALLEX 1-2-730, an ALJ must proffer all post-hearing evidence, unless the claimant or the representative submitted the evidence or if the claimant waived her right to examine the evidence.  Neither situation was present; 2) the ALJ did not discuss the claimants visual impairment, specifically a February 2001 examination and how this impairment would effect claimant's ability to work and function; 3) the ALJ did not give a rationale for not accepting the opinion of Dr. Crapanzano, a treating physician, nor for not discussing or accepting the opinion of a medical expert who testified at the hearing with respect to claimant meeting the criteria for Listing 12.04"C" relating to mental impairments; and 4) the ALJ failed to provide adequate and clear discussion of the claimant's residual functional capacity. (Tr. 186-189.)

[4] See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*

impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) plaintiff retained the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds occasionally, to stand and walk six hours in a workday and sit six hours in a workday, her push and pull ability would be limited by the weights she was able to lift and carry, she was able to understand, remember, carry out and sustain attention to perform simple one and two-step instructions in jobs requiring a limited interaction with the public, and was able to perform work not requiring her to read fine print or work at heights or around dangerous machinery; and 5) plaintiff was capable of performing her past relevant work as a cleaner/housekeeper. (Tr. 25-31, Findings 1-6.)

Plaintiff requested a review of the decision by the Appeals Council, and on May 8, 2007, the request was denied, making ALJ Ragona's decision the final decision of the Commissioner. (Tr.8-10,32.)  Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## **ANALYSIS**

In reviewing the ALJ's decision denying disability income benefits and supplemental security income benefits, the Court is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the ALJ applied the proper legal standard.[5]  In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision.  Substantial evidence means more than a

---

[5] Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005); Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.[6]  If substantial evidence supports the administrative finding, we may then only review whether the ALJ applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.[7]

The burden of proof in disability income benefits cases and supplemental security income cases rests upon the claimant.[8]  The claimant bears the burden of proof with respect to the first four steps of the five-step sequential analysis.  At step three, in order to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that her impairment meets or equals an impairment in the appendix to the regulations.[9] Then, if at step four the claimant can prove that she no longer is able to work in her past relevant work, then and only then does the burden shift to the ALJ to establish that the claimant nonetheless has the ability to engage in other substantial gainful activity.[10]  In the instant case, the ALJ found plaintiff not disabled at step four of the sequential analysis because she could perform her past relevant work as a cleaner/housekeeper.

---

[6] Id.

[7] Cook v. Heckler, 750 F.2d 391, 393, citing Hernandez v. Heckler, 704 F.2d 857, 859 (5th Cir. 1983); Bormey v. Schweiker, 695 F.2d 164, 168 (5th Cir. 1983), *cert. denied* ---- U.S. ----, 103 S. Ct. 3091, 77 L.Ed.2d 1351 (1983)("...we must also determine whether... [commissioner] applied the proper legal standard... and whether the proceedings below were conducted in conformity with the applicable statutes and regulations.")

[8] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

[9] Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

[10] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

In her brief, plaintiff raises two issues: 1) the ALJ erred in his assessment of the plaintiff's physical residual functional capacity; and 2) the ALJ erred in his assessment of the plaintiff's mental residual functional capacity and did not make adequate findings regarding her ability to sustain gainful employment for a significant amount of time.

As stated above, this matter was heard by two previous ALJ's and the Appeals Council remanded both decisions for specific reasons. Plaintiff concentrates on the first hearing by ALJ Lessis' who made an RFC assessment in February 28, 2003 and argues that this RFC was never proposed to a vocational expert (VE). However, that RFC is not before this Court and the Court must consider whether the current decision is supported by substantial evidence in the record as a whole.[11] The 2003 decision is not the final decision of the Commissioner subject to judicial review under section 205(g) of the Act,[12] and thus ALJ Ragona was not bound by that decision. The issue of previous ALJ findings has been discussed by the 5th Circuit in Muse v. Sullivan,[13] which states "when the [Commissioner] remands cases for redetermination, there is no rule of issue preclusion." In Muse, the Court stated that when the Appeals Council vacated its denial of the claim for disability benefits and remanded for redetermination on all issues, the Commissioner was not bound by the previous finding that claimant could perform only light work.[14] Therefore, plaintiff's argument that ALJ's Lessis' 2003 RFC should be used as a basis for finding plaintiff disabled is without merit, and the Court will base its recommendation on the record and the 2006 decision of ALJ Ragona, which is the subject of review.

---

[11] Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005); Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[12] 42 U.S.C. § 405(g).

[13] 925 F.2d 785, 790 (5th Cir. 1991).

[14] Id.

6

**Assessment of Plaintiff's Physical and Mental Residual Functional Capacity**

Plaintiff, at the relevant period under consideration, was considered to be a younger individual with a high school degree and additional vocational technical training as a secretary and flight attendant, and training in electrical and mechanical work. (Tr. 217-297.) Her past relevant work consisted of cleaner/housekeeper (janitor), sales clerk (food services) and file controller. (Tr. 31, 230, 697.) The ALJ found that plaintiff's impairments were severe and consisted of diabetes, hypertension, Grave's disease, obesity, impaired vision secondary to Grave's disease and bipolar disorder which could be expected to produce some limitations. (Tr. 25.) However, the ALJ found that these impairments, either alone or in combination did not meet or medically equal any one of the listed impairments.

Plaintiff argues that due to her diabetic-related foot problems, the ALJ should have assessed functional limitations regarding her inability to engage in prolonged standing and walking, and further, that if she could not withstand prolonged standing and walking she would not be able to perform her past relevant work as a house cleaner. The medical evidence indicates that plaintiff does suffer from thick lycotic nails and has been treated at the LSU Medical Center Diabetes Foot Program. The treatment consisted of nail trimming and debridement. (Tr. 278-86, 289-94.) No physician ever opined that plaintiff should not stand or walk due to this impairment. In fact, a treatment record in 1999 states that plaintiff was advised to walk for exercise 1-2 miles two to five time a week and to check her feet after walking. (Tr. 283.) Also, when plaintiff presented at the Earl K. Long Medical Center in 2000 complaining of foot swelling, physical examination and imaging scans were all normal. (Tr. 387, 453.) Plaintiff was examined by Dr. Adeboye Francis, MD, an agency sponsored physician on February 2, 2001, and upon examination, Dr. Francis failed to

detect any musculoskeletal problems with any of plaintiff's extremities and plaintiff exhibited normal ranges of motion. (Tr. 357.)  To reinforce her argument, plaintiff simply points to her own testimony and that of the medical expert, Dr. Thomas Fain, at the hearing in 2006.[15]

Plaintiff testified to chronic foot problems which cause pain and which prevent her from walking or standing for more than 15 minutes at a time. However, the above documented medical evidence relative to her diabetic-related foot problems does not give plaintiff's testimony much credence.  Plaintiff points out that the VE testified that if this indeed was the case, the plaintiff would not be able to perform her past relevant work.  But, as stated above, the evidence does not support plaintiff's testimony.  Dr. Fain testified that plaintiff's recurrent foot problems were not uncommon for a diabetic particularly if the diabetic is noncompliant by not taking her insulin regularly. (Tr. 671.)  Dr. Fain further testified that it would be "unusual" for a diabetic to have problems engaging in prolonged walking or standing based primarily on recurrent callouses and thick or discolored nails. (Tr. 671.)

The ALJ also discusses the evaluation by Dr. Mark Walker, a state agency medical consultant.  Dr. Walker opined that plaintiff was able to perform the exertional demands of medium work, with modifications to accommodate plaintiff's visual impairment.[16]  The ALJ found that there is no medical evidence that documents a condition which would limit the

---

[15] Dr. Thomas Karl Fain is a clinical forensic and medical psychologist. (Tr. 645.)

[16] In March 2001, plaintiff was evaluated by an ophthalmologist at the request of Disability Determinations Services which indicated plaintiff's best corrected vision was 20/60 in each eye which would restrict her ability to read fine print or work at heights or with dangerous machinery.  An examination in July 2005, indicated plaintiff's visual acuity as 20/40 in both eyes; and in June 2006, visual acuity of 20/25-1 in the right eye and 20/20-1 in the left eye.  No treating source has provided an opinion regarding the claimant's visual limitations.

claimant's ability to perform medium work activity, and no physician has advised plaintiff to restrict her work-related physical activities in any way.

Plaintiff argues that the ALJ disregarded the medical evidence and testimony in finding that plaintiff could perform medium level work with no limitations on standing and walking. An ALJ is not required to assess physical functional limitations on prolonged walking and/or standing given that such limitations were not supported by the overall record.[17] As stated above, the medical records and the record as a whole does not document any limitation on prolonged walking and/or standing. Therefore, the Court finds that there is sufficient evidence in the record to support the ALJ's RFC assessment with regard to plaintiff's walking and standing limitations.

Plaintiff then argues that the ALJ's assessment of plaintiff's mental residual functional capacity is not supported by substantial evidence. In his decision, the ALJ assessed plaintiff's mental impairments by applying the Psychiatric Review Technique set forth in the Regulations. Specifically, the ALJ considered the requirements of listing 12.04, which deals with bipolar disorder, and also notes the Appeals Council's reference to prior medical expert testimony suggesting that the plaintiff's impairment meets the criteria for listing 12.04C. Listing 12.04C is met when an individual with the full clinical picture of bipolar syndrome also has a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho social support and one of the following:

---

[17] See, 20 C.F.R. §404.1545(a)(3)(the Agency "...will assess your residual functional capacity based on all the relevant medical and other evidence.").

1.   ***Repeated episodes*** of decompensation, each of extended duration; or

2.   A residual disease process that has resulted in such marginal adjustment ***that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate***; or

3.   Current history of 1 or more years' ***inability to function outside a highly supportive living arrangement***, with an indication of continued need for such an arrangement.[18]

The ALJ found that plaintiff's bipolar disorder does not meet or equal the requirements of Listing 12.04C. The ALJ discusses, at length, the meaning of decompensation which is the first requirement of the Listing:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medications or documentation of the need for a more structured psychological support system (e.g. hospitalizations, placement in a halfway house, or a highly constructed and directing household); or other relevant information in the record about the existence, severity, and during of the episode. The phrase 'repeated episodes of decompensation, each of extended duration' in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (Tr. 25-26.)

The record indicates that plaintiff has been treated for her mental disorder for several years. However, the ALJ found that the evidence does not document any episodes of decompensation which could be inferred by increased treatment, hospitalization or any other relevant evidence of record.

---

[18] 20 C.F.R. Pt. 404, Subpt. P, App. 12.04C. Affective Disorders.  (Emphasis Supplied by the Court.)

Paragraph (2) deals with a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.  The ALJ points out and Plaintiff testified that she lives with her husband who is disabled due to paranoid schizophrenia and cared for her mother, who was suffering from Alzheimer's for about three years. She also testified that her husband had a gambling problem that became severe and threatened her marriage.  There is no evidence in the record that would indicate plaintiff decompensated during these demanding times.  Therefore the requirements of paragraph (2) are not met.

With respect to the requirement contained in paragraph (3) which refers to current history of 1 or more years' of an inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement, the record is void of any documented proof that plaintiff has ever been placed in a mental hospital for any length of time.  Further, while plaintiff argues that the ALJ improperly focused on the aspect of plaintiff's daily life, the Court finds that her role as a care giver played an integral part of plaintiff's life while she was being treated for her bipolar disorder, and it covered a rather lengthy time period, thus being very relevant.  Further, it indicates that plaintiff is capable of dealing with stressful situations without decompensation or the need to be placed in a highly supervised living arrangement.  But the ALJ's decision indicates that this is not the only evidence he relied upon in making his determination.  The ALJ gave an in-depth description of the treatment by plaintiff's treating and non-treating physicians and therefore it is proper to conclude that the ALJ relied on this evidence as well in making his

decision. Therefore, plaintiff's argument that the ALJ ignored the evidence and based his denial merely on plaintiff's role of care giver is without merit.

Plaintiff then makes reference to the medical records of Dr. Kathleen Crapanzano, who treated plaintiff for more than three (3) years. In 2001, Dr. Crapanzano opined that plaintiff, despite full compliance with treatment, still experienced bouts of depression and that due to this analysis she is incapable of sustaining employment. (Tr. 360.) However, there are many other instances in Dr. Crapanzano's treatment notes, dating from 1997 to 2001, that state that plaintiff's bipolar disorder was stable and responsive to treatment. (Tr. 315, 320-24, 332, 337-78, 340-41, 344.) This diagnosis can be found throughout Dr. Crapanzano's medical records. A review of the records of Dr. Crapanzano clearly indicates that generally the plaintiff's condition was controlled by her medications with only mild set backs. Oddly, on January 5, 2001, the day that Dr. Crapanzano prepared her letter stating plaintiff was incapable of sustaining employment, the record reveals that plaintiff's mood was improved, her condition stable and that plaintiff has done relatively well in recent years with treatment and good medication compliance.[19] The note goes on to state that plaintiff is mentally ill and that she has done relatively well in recent years with regular treatment and good compliance. (Tr. 315.)

Plaintiff was also treated by psychiatrist, Dr. Aniedi Udofa for several years, however plaintiff simply offers Dr. Udofa's one page letter of January 28, 2005, wherein he describes plaintiff's bipolar disorder as "...a chronic severe mental illness....has only been able to attend partial remission of her illness and continues to have mood swings mixed with

---

[19] Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986) (a medical condition that can be remedied by surgery or medication is not disabling).

12

depressive episodes....This severely limits her ability to maintain any form of employment." Other than this one page opinion, plaintiff offers no other evidence from this treating physician to support her argument.[20]  Dr. Udofa's records never mention that plaintiff has had episodes of decompensation.

Further, Dr. Gutierrez, a staff psychiatrist at the Margaret Dumas Mental Health Center, provided a "check the block" form on June 3, 2002, concluding that plaintiff has a moderate ability to engage in social interaction, sustain her concentration and pace, and adapt to her surroundings/workplace. Moderate, as defined on the form, is one which affects the individual's functioning, but does not preclude ability to function in the work setting.  On the same form, Dr. Gutierrez indicated that claimant's condition was likely to deteriorate if placed under stress, particularly that of a job. (Tr. 472-474.) Clearly, these opinions are contradictory.

Plaintiff was also evaluated by Dr. Sandra B. Durdin, Ph.D. on June 1, 2005, at the request of Disability Determinations Services.  Dr. Durdin found plaintiff to have the ability to understand, remember, and carry out detailed instructions adequately. She also found that plaintiff had the ability to sustain effort and persist at a normal pace over the course of a forty-hour week from a mental perspective, and depressive symptoms should be treatable with compliance.

In her appeal, plaintiff also references the testimony of Dr. Fain, the psychologist who testified at plaintiff's third hearing.  Plaintiff specifically ends her argument by stating,

---

[20] Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995) (good cause for abandoning a treating physician's opinion includes 'disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence."); Scott v. Heckler, 770 F.2d 482 (5th Cir. 1985). (The ALJ may give less weight to a treating physician's opinion when "there is good cause shown to the contrary as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight....")

"Remarkably, Dr. Fain testified that, given the fluctuations in her levels of functioning, it would be difficult for Patterson to sustain gainful employment. (Tr. 669)"[21] However, Dr. Fain <u>actually</u> testified as follows:

Plaintiff's Representative:   Okay.  Doctor, we've as we've discussed briefly, and is that there's two separate opinions from physicians who've examined the claimant, psychiatrists, Dr. Udofa's with as we've discussed, as well as Dr. Crapanzano.  Both of which conclude that the claimant would have a difficult time sustaining gainful employment.  Given the fluctuations in her levels of functioning as you've testified today, would it be somewhat difficult for this claimant to be able to sustain gainful employment over a significant period of time day in and day out?

Dr. Fain:   Probably yes.  It would probably be so.  So, it would have to be a job that had some type of variations in it to where she could like [be] able to take breaks, or do something and be somewhat self-motivate in her work.  And I could think of some.  But something like that.  I think that if it were a job that was high stress, high concentration, high levels of functioning that way.  I think it would be problematical.

Plaintiff's characterization of Dr. Fain's testimony is misleading.  Dr. Fain in no way stated that plaintiff was incapable of sustaining gainful employment.  In fact, he clearly states that he feels there are some types of employment that plaintiff can perform.  This is in line with the type of work the ALJ's RFC allows with respect to her mental impairment,

---

[21] Plaintiff's Memo. Pg. 13.

14

in that plaintiff was found able to understand, remember, carry out and sustain attention to perform simple one and two-step instructions in jobs requiring limited interaction with the public.

Plaintiff also argues that the ALJ did not give the proper weight to the opinions of her treating physicians. In determining the weight to be given the opinions of plaintiff's treating physicians, the ALJ acknowledged that treating source opinions will be given controlling weight when certain requirements are met. He goes on to cite Social Security Ruling 96-2p which directs that a medical opinion provided by a treating physician must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial medical and non-medical evidence in the record.[22] Also, the Fifth Circuit has held that a treating physician's opinion is not necessarily conclusive and that the ALJ has the sole responsibility for determining a claimant's disability status and when good cause is shown, less weight, little weight, or even no weight may be afforded to any physician's (opinion) testimony (Tr. 29.)[23] In this case, the one page letters of Dr. Crapazano and Dr. Udofa are not supported by the medical evidence and the record as a whole as mentioned above. Further, Dr. Guiterrez's "Check the Box" form contained contradictory statements. Therefore, the Court finds that the ALJ gave the proper weight to the opinions of plaintiff's treating physicians.

In regards to meeting a listed impairment, the ALJ found that given the totality of the evidence, plaintiff had the following functional limitations relevant to listing 12.04: a mild

---

[22] Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); Martinez v. Chater, 64 F. 3d 172 (5th Cir. 1995).

[23] See, Newton, 209 F.3d at 456; Greenspan v. Shalala, 38 F.3d at 237 (explaining that good cause permits granting less than full weight to a treating physician's opinion.)

restriction of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, particularly for complex tasks, and no episodes of decompensation of extended duration.  Therefore, the ALJ found that plaintiff did not meet or equal the requirements of Listing 12.04C or any other listing.

As stated above, at step three of the sequential analysis, the plaintiff has the burden of proving that her impairments meet or equal, either alone or in combination, the criteria of a listed impairment.[24]  The Fifth Circuit has held that in order to meet a listed impairment, a plaintiff must show that he meets all the requirements of a listed impairment.[25]   Plaintiff has not met this burden.  Therefore, the Court finds that there is sufficient evidence in the record to support the ALJ's finding that plaintiff's impairments do not meet the suggested listing by plaintiff, and further that plaintiff has failed in her burden to prove otherwise.

Plaintiff further argues that because she has had periods of stability with relatively few symptoms, this does not negate the episodes of instability with periods of acute symptomology.[26]  Plaintiff cites Singletary[27] for her authority, where the Fifth Circuit held that in dealing with mental impairments, symptom-free intervals do not necessarily compel a finding of not disable.  The Fifth Circuit further states that a claimant must present medical evidence which indicates that the mental condition is a long-term problem and not just a temporary set-back.  The Court concurs that plaintiff has a chronic bipolar disorder

---

[24] Waters, *supra.*

[25] Sullivan v. Zebley, 493 U.S. 521, 530 91990)(claimant must manifest all the specified criteria of a particular listing to qualify for a disability under that listing.)

[26] Plf's Memo. P. 12.

[27] Singletary v. Bowen, 798 F.2d 818, 821-822 (5th Cir. 1986.)

16

and has been receiving treatment for six years.  The medical evidence shows, on numerous occasions, however, that her disorder is stable and controlled with medication.  Further, as stated above, plaintiff's impairment does not rise to the level of severity to meet the criterion of the mental disorder listing 12.04C.  Again, the record is void of any documentation that plaintiff has decompensated or has been placed in a hospital for mental treatment or has had to be placed in any type of structured environment in order to function.  Plaintiff has, however, functioned in a very stressful atmosphere when she had to care for her elderly mother and her mentally impaired husband.  Therefore, plaintiff's reliance on Singletary is misplaced in this instance.

Plaintiff was found not disabled at step four of the sequential analysis because the ALJ found that she could perform her past relevant work as a cleaner/housekeeper.  In making this decision, the ALJ called upon a vocational expert (VE).  The VE described plaintiff's past work as light and unskilled. (Tr. 697.)  The following hypothetical question was posed to the VE: If plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently; if she could stand and walk for six hours in an eight-hour day, and sit for six hours; if she couldn't do complex work; if she required work with limited interaction with the general public, where she's more comfortable working with things rather than people; and if she required work that didn't require her to read fine print, could she do her past work as a janitor or cleaner/housekeeper?  The VE responded that she could. The plaintiff asserts that the ALJ found that the plaintiff was capable of doing medium exertional work.  It is clear from the testimony of the VE that plaintiff's past relevant work is defined as light and unskilled.  The VE stated,

> "She did essentially three positions that capture the work.....janitorial....cleaner/housekeeper....That's light and

17

> unskilled with an SVP of two. She's also worked a couple of locations in past as a seafood clerk. For that I would call it sales clerk, food. It, too, is light, semiskilled with an SVP of three."

Plaintiff's argument is that the ALJ's RFC assessment is flawed. However, the ALJ's RFC takes into consideration that plaintiff does not have any physical impairment that would prevent her from working, [28] and the RFC allowed for plaintiff's mental abilities in that limitations were included for instructions and interactions with the public. Therefore, the Court finds that there is sufficient evidence in the record, both medical and testimonial, to support the ALJ's finding that plaintiff can perform her past relevant work as a housekeeper and thus is not disabled. The Court also finds that the ALJ followed the proper legal standards in making this determination.

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the Plaintiff's appeal be dismissed, with prejudice, and judgment be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, August 28, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[28] The only physical impairment offered by the plaintiff is her foot problems.